IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CHRISTOPHER ROBERT SKOMARS,

                Appellant,

v.

JAMES V. BLOCK,

                Appellee.

OPINION AND ORDER

23-cv-892-wmc

---

Christopher Robert Skomars appeals from a final order of the United States Bankruptcy Court for the Western District of Wisconsin, *In re Skomars*, No. 22-11992-7, 2023 WL 9015058, at *1 (Bankr. W.D. Wis. Dec. 28, 2023), sustaining an objection by Chapter 7 bankruptcy trustee James Block to Skomars' attempt to exempt an annuity death benefit and motorcycle tools from his bankruptcy estate under Wis. Stat. §§ 815.18(3)(b)(1) and (f)(2). (*See* dkt. ##1 and 1-1.)[1] For the reasons below, the court finds no error by the bankruptcy court in sustaining the trustee's objections to either exemption. Accordingly, Skomars' appeal must be denied.

FACTS[2]

Appellant Christopher Skomars filed a voluntary, Chapter 7 bankruptcy petition on December 21, 2022. On his Schedule A/B, he listed in relevant part: (1) a "1/3 interest in Contract No. 71362805" issued by Allianz Life Insurance Company of North America

---

[1] All citations are to the docket entries in this court unless otherwise noted.

[2] The facts in this case are undisputed and taken from the bankruptcy court's decision, the parties' briefs, and the electronic bankruptcy record in this district.

and identified as an annuity; and (2) 24 items of machinery, fixtures, equipment, and supplies.

The life insurance policy was issued by Allianz Life Insurance Company to Skomars' mother, Jennifer Kareken, who is identified as the "owner" and "annuitant" on the contract schedule, while naming Skomars and his two brothers as the beneficiaries whose "relationship to the owner" is identified as "child." (Annuity contract, Bankr. Case No. 22-11992, dkt. #62-1, at 1-2, 7, and 23.) The contract defines several of these terms: "Annuitant" is "[a]n individual whose Age determines the Annuity Payments under any annuity options with lifetime Annuity Payments"; "Beneficiary" is "[a]n individual or non-individual entitled to the Death Benefit under this contract"; and "Owner" is "[a] purchaser of this contract, who is entitled to the ownership rights described in this contract" and is "shown on the Contract Schedule." (*Id.*, at 13-14.)

While the annuity contract does not expressly identify a maturity date, it provides for "Annuity Payments" that begin on the "Annuity Date," which was assumed to be June 24, 2026, when Kareken would have been 70 years old. (*Id.*, at 3 and 21.) However, because Kareken died on September 11, 2022, before any annuity payment was made, her sons became entitled to a death benefit equal to a one-third interest in the contract. Appellant Skomars and his two brothers were each given three options with respect to the payment of their death benefit: a lump sum; deferral of payment for up to five years; *or* payment as an annuity over his life (or a period not exceeding his life expectancy). On December 29, 2022, Skomars elected the lump sum payment, and Allianz issued him a check on February 7, 2023, for one-third of the contract value, or $12,071.48.

As far as tools and equipment, Skomars listed various items that he acquired during his training and employment as a motorcycle mechanic, including: a classic 78 toolbox worth $4,270; a stainless toolbox top worth $1,320; a wrench set worth $3,675; and a metric wrench set worth $5,735. However, Skomars admitted that he had not been employed as a mechanic for at least two years before filing his bankruptcy petition and had no business interests of any kind for the past four years. In addition, he disclosed that as of the bankruptcy filing date, he was instead employed as an in-store order taker and cashier for Domino's, had no business income, and did not file a business income budget.

Accordingly, appellee James Brock, the trustee, objected to the above claims for exemptions, and the court set briefing on the matter in October 2023. In a decision issued on December 28, 2023, Bankruptcy Judge Catherine J. Furay sustained the trustee's objections, on the grounds that: (1) the annuity was not exempt under Wis. Stat. § 815.18(3)(f), since Skomars did not "own" the annuity contract; and (2) the mechanic tools were not exempt under Wis. Stat. § 815.18(3)(b), since Skomars was not employed as a mechanic on the date he filed his bankruptcy petition.[3]

Skomars timely appealed the bankruptcy court's decision, and this court has jurisdiction to hear his appeal under 28 U.S.C. § 158(a), because orders granting or denying exemptions are appealable as final judgments. *See Matter of Wade*, 991 F.2d 402, 406 (7th Cir. 1993); *Lunkes v. Gecker*, 427 B.R. 425, 428-29 (N.D. Ill. 2010); *see also In re Oakley*, 344 F.3d 709, 711 (7th Cir. 2003) ("The adjudication [of debtor's entitlement to cash

---

[3] While the trustee also sought turnover of certain tax refunds and bank accounts, Skomars did not object to those requests in the bankruptcy court or on appeal. (*See* dkt. #1-1, at 2.)

3

exemption] is definitive because it cannot be affected by the resolution of any other issue in the proceeding, and therefore no purpose would be served by postponing the appeal to the proceeding's conclusion.").

OPINION

I. Standard of Review

On appeal, a district court reviews a bankruptcy court's factual findings for clear error and its legal conclusions *de novo*. *Mungo v. Taylor*, 355 F.3d 969, 974 (7th Cir. 2004). For mixed questions of law and fact, the standard of review depends on whether the inquiry "entails primarily legal or factual work." *U.S. Bank N.A. v. Village at Lakeridge, LLC*, 583 U.S. 387, 396 (2018) (noting legal work involves developing auxiliary legal principles of use in other cases and factual work involves marshalling and weighing evidence, making credibility judgments, and addressing special, narrow facts that resist generalization).

Here, Skomars argues that the bankruptcy court erroneously interpreted the meaning of certain terms in Wisconsin's bankruptcy exemption statute, Wis. Stat. § 815.18(3), which is typically a question of law. *See Matter of Yonikus*, 996 F.2d 866, 868 (7th Cir. 1993), *abrogated on other grounds by Law v. Siegel*, 571 U.S. 415, 425 (2014) ("A debtor's entitlement to a bankruptcy exemption is a question of law to be reviewed *de novo*."); *Lunkes v. Gecker*, 427 B.R. 425, 428-29 (N.D. Ill. 2010) (same). However, because Skomars asks this court to consider and weigh specific evidence involving the special terms of his late mother's annuity contract in deciding whether the bankruptcy court erred in sustaining the trustee's objection to the annuity exemption in § 815.18(3)(f), the

appropriate standard of review is clear error.[4]  While the bankruptcy court also grappled with the meaning of the term "owned," its primary task was "the fact-intensive job of exploring" whether Skomars' particular situation met the statutory requirements, rather than "clarifying legal principles," "developing norms and criteria," or providing guidance to other courts resolving other disputes.  *See U.S. Bank*, 583 U.S. at 968 (in deciding standard of review, courts should ask how much legal work required in applying statutory test).

On the other hand, the task of the bankruptcy court -- and now this court -- in reviewing the applicability of the exemption under § 815.18(3)(b) is *when* Skomar's employment and business circumstances should be evaluated, which clarifies or develops criteria regarding the overall reach or scope of the exemption statute.  Therefore, the bankruptcy court's decision regarding whether Skomars' tools are exempt under § 815.18(3)(b) is subject to *de novo* review.

## II. Wisconsin's Bankruptcy Exemptions

As the bankruptcy court correctly noted, "when a debtor claims a *state-created* exemption, the exemption's scope is determined by state law." *Law*, 571 U.S. at 425.  Wisconsin's exemption statute contains its own rule of construction, providing that "[t]his section shall be construed to secure its full benefit to debtors and to advance the humane purpose of preserving to debtors and their dependents the means of obtaining a livelihood,

---

[4] Importantly, this court's decision would not change if it applied a *de novo* standard of review as Skomars requests, since the bankruptcy court's description of his choice of a lump sum payment appears unimpeachable.

the enjoyment of property necessary to sustain life and the opportunity to avoid becoming public charges." Wis. Stat. § 815.18(1); *see also In re Bronk*, 775 F.3d 871, 875 (7th Cir. 2015) (citing same); *Julius v. Druckrey*, 214 Wis. 643, 254 N.W. 358, 361 (1934) ("It is well settled that exemption laws must have a liberal construction, within the limits contemplated by the Legislature.").

On the other hand, "principles of liberal construction cannot be employed to write exemptions into the statutes." *Bronk v. Cirilli*, No. 11-cv-172-wmc, 2012 WL 12012746, at *5 (W.D. Wis. Sept. 28, 2012), *aff'd in part, rev'd in part sub nom. In re Bronk*, 775 F.3d 871 (7th Cir. 2015) (quoting *Schwanz v. Teper*, 66 Wis. 2d 157, 164, 223 N.W.2d 896 (Wis. 1974)); *see also In re Woller*, 483 B.R. 886, 890 (Bankr. W.D. Wis. 2012) (construction of exemption statute requires both favoring debtor and recognizing that the statute reflects legislative choice to protect certain assets at the expense of others). Indeed, "[e]xemptions are a statutory privilege, not a common law right; absent a statutory exemption, all of a debtor's legal or equitable property interests are subject to the bankruptcy estate." *Bronk*, 2012 WL 12012746, at *5 (citing *Matter of Geise*, 992 F.2d 651, 656 (7th Cir. 1993)). Applying the appropriate standards for statutory construction, the bankruptcy court found that Skomars was not entitled to either of his claimed exemptions under the express language of the exemption statute.

### A. Annuity

Under Wis. Stat. § 815.18(3)(f)(2), any "unmatured life insurance or annuity contract owned by the debtor and insuring the debtor" is exempt from the debtor's estate up to $150,000 in value, as long as the contract was issued more than 24 months after the

exemption is claimed, as was the case here.[5] The statute generally defines "annuity" as "a series of payments payable during the life of the annuitant or during a specific period." Wis. Stat. § 815.18(2)(am). The bankruptcy court determined that Skomars was not entitled to claim his benefit in the annuity as an exemption because he did not own the annuity, he was not insured by it, and the annuity had already matured by the date of bankruptcy filing. Skomars' challenges to these findings are all unavailing.

Skomars argues that while the exemption statute does not define "owned," the common meaning of the term "own" is possession, dominion, or control, which he held over the annuity's death benefit. *See* WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 843 (1984) ("own" means "to have or hold as property: possess" and "to have power over: control"); BLACK'S LAW DICTIONARY 1259 (rev. 4th ed. 1971) ("own" means "to have good legal title; to hold as property; to have a legal and rightful title to; to have; to possess"). However, as the bankruptcy court correctly noted, Skomars ignores the fact that the statute clearly refers to ownership of the *annuity contract* itself, and not ownership of a death benefit or right to be paid under the contract. Indeed, the contract unambiguously lists Kereken as the sole owner and annuitant, while Skomars was one of three beneficiaries entitled to a death benefit.

While Skomars criticizes the bankruptcy court for narrowly reading the term "ownership" to include only the individual named as the owner, the contract itself expressly states that only the *purchaser* of the contract, who is *named* as the owner on the contract

---

[5] Kereken's annuity contract was issued in 2016, more than six years before Skomars claimed an exemption for his death benefit.

7

schedule, has ownership rights. As already discussed, when Kereken purchased the contract, she named Skomars as one of three sibling beneficiaries entitled to the death benefit. The fact that Skomars received a payment under the contract does not mean that he inherited ownership of the annuity contract or that he became insured by it after his mother passed. *See Boches v. Merry*, 166 Wis. 2d 1, 480 N.W.2d 568 (Wis. Ct. App. 1991) (concluding that garnishment exemption for life insurance proceeds applies only to creditors of the deceased insured, not creditors of the policy beneficiary). Far from it, as he elected to receive a lump sum payment, and the beneficiary designation section of the annuity application that Kereken completed specifically states that an individual owner or joint owner cannot be a beneficiary. (Bankr. case no. 22-11992, dkt. #62-1, at 58.)

In short, Skomars merely owned one-third of the death benefit from his mother's annuity, which does not entitle him to an exemption under § 815.18(3)(f)(2). Because this court concludes that Skomars cannot meet the ownership and insured requirements of the exemption for annuities, it is unnecessary to address the parties' arguments regarding whether Kereken's annuity had matured in this case.

**B. Motorcycle Tools**

Under Wis. Stat. § 815.18(3)(b)1, debtors may claim as exempt "[e]quipment, inventory, farm products, and professional books used in the business of the debtor or the business of a dependent of the debtor, not to exceed $15,000 in aggregate value." Skomars contends that the bankruptcy court erroneously found that he did not qualify for this exemption because he was not working as a motorcycle mechanic on the date he filed for bankruptcy and had not engaged in such work for at least two years. He argues that the

8

term "used" in the statute encompasses both his *past* use of the tools because the common meaning of "used" includes having been used before, and by its express terms, the exemption is not limited to present use or use at the time of filing.

As noted by the parties and bankruptcy court, the exemption statute does not define "use," but it does define "business" as "any lawful activity, including a farm operation, conducted primarily for the purchase, sale, lease or rental of property, for the manufacturing, processing or marketing of property, . . . or for the sale of services." Wis. Stat. § 815.18(2)(b).  The bankruptcy court held that Skomars did not satisfy these requirements because on the petition date, he was employed by Domino's, did not have any business income for the previous two years, and reported having no business interest in the past four years.  Further relying on two, earlier bankruptcy court decisions from this district, the bankruptcy court held that the determination is made as of the petition date and does not extend to tools that might have been used by a debtor in the past.  *See In re Willis*, 495 B.R. 856, 860 (Bankr. W.D. Wis. 2013) (In applying the similar federal exemption, holding that "[g]enerally, the petition date is the date at which a claim to exemption is determined."); *In re Richardson*, 47 B.R. 113, 118 (Bankr. W.D. Wis. 1985) ("For purposes of lien avoidance [under 11 U.S.C. § 522(f)(2)(B)], . . . debtor must be engaged in the trade to which the tool belongs, in order to claim the tools as exempt" under 11 U.S.C. § 522(d)(6).).  Finally, the bankruptcy court declined to speculate as to whether the exemption could apply to a future business endeavor because there was no evidence of any such future activity in Skomars' case.  Thus, the bankruptcy court found that "[t]here is simply no interpretation of the statute that could allow such an exemption without

9

rendering the exemptions void as over-broad and all-encompassing." *In re Skomars*, 2023 WL 9015058, at *4.

As Skomars points out, in *Matter of Patterson*, 825 F.2d 1140 (7th Cir. 1987), the Seventh Circuit called into question the holding of *In re Richardson* and other cases that "the relevant date for determining whether the debtor is still in the trade for purposes of the [*federal*] tools of the trade exemption is the date on which the bankruptcy petition is filed." *Id*. at 1143. However, Skomars fails to acknowledge that the court of appeals also noted in *Patterson* that the "date of asking for the exemption, rather than the date of the petition for bankruptcy, might seem the relevant date for determining the availability of the tools of the trade exemption, given the purpose of that exemption, which is not to confer a windfall on the debtor or (as in the case of the homestead exemption) to lessen the blow of bankruptcy on the bankrupt and his family, but to enable him to remain in his trade after bankruptcy." *Id*.; *cf*., 11 U.S.C. § 522(b)(3)(B) (property is "any interest in property in which the debtor had, *immediately before* the commencement of the case") (emphasis added). Since it is undisputed that Skomars was *not* using the motorcycle tools in a business activity either at the time he filed his bankruptcy petition *or* when he requested the exemption, *Patterson* is of no use to Skomars here.

Finally, Skomars cites *In re Hogrefe*, No. BANKR 04-04069S, 2005 WL 1320141, at *1 (Bankr. N.D. Iowa May 26, 2005), in support of his contention that the use of tools in past business activity suffices. However, that case provides little guidance because it involved a claim for exemption under *Iowa* law. Moreover, the court in *Hogrefe* held that "[e]xemption rights are determined at the time of the bankruptcy filing," and found there

was insufficient evidence to satisfy the trustee's burden in objecting to the exemption because "[t]here is no evidence as to Mr. Hogrefe's farming activity at or previous to the date of filing" or "his intent to continue farming as of the date of bankruptcy." Neither the parties nor the bankruptcy court identified any similar evidentiary deficiencies in this case.

Accordingly, this court finds no legal basis for applying Wisconsin's tools of the trade exemption to a debtor's past use of tools of the trade if the debtor has no current business activities or prospects.

ORDER

IT IS ORDERED that the final decision of the United States Bankruptcy Court for the Western District of Wisconsin sustaining the trustee's objections to the exemptions in Wis. Stat. § 815.18(3)(b) and (f) is AFFIRMED. The clerk of court is directed to close this case and enter judgment accordingly.

Entered this 7th day of February, 2025.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge